Gaston, J.
 

 The bill in this case was filed in February, 1839. It charges that, sometime in the year 1829, the plaintiff “having fallen into great difficulties, caused, in some degree by an irregular course of life,” was induced by his brother, the late Daniel Webb, to break up house-keeping and remove to
 
 his
 
 house: that at the same time he was pursuaded by his said brother to execute to him (the said Daniel) a conveyance of two negro men, Stephen and Rufus, that for these negroes no consideration whatever was paid, and that the conveyance was made upon trust, that the said Daniel would pay the plaintiff’s debts to the amount of their value; that the said Daniel held them for four years, and then, without having paid or accounted for their hire or services, re-
 
 *447
 
 conveyed the same to the plaintiff; that, about the year 1829, he sold to Joseph and John Irwin a tract of land at the price of $1,230, and for the purpose of satisfying the fears of Joseph Irwin, who expressed an apprehension that the said Daniel might have some claim upon the land, the said Daniel joined in the deed of conveyance, and the purchase money was received by the said Daniel, upon an express trust to be applied to the plaintiff’s use in the payment of his debts and otherwise ; that, at the time of going to live with the said Daniel, the plaintiff carried with him several head of cattle and hogs, corn, wheat and bacon, which were used in the family of the said Daniel, under a like trust to account; that the plaintiff also carried with him a wagon and team of four horses, under a like trust to account, of which the said Daniel had the use for four years; and that he also carried a set of blacksmith’s tools under the same confidence, which the said Daniel received- and finally kept. The plaintiff charges, that the said Daniel did not discharge the said trust, by paying the debts of the plaintiff, or applying the money or property to the plaintiff’s use, nor ever accounted for the same; that the said Daniel is dead, and the defendant, at the last term of Rowan County Court, proved his will as executor, and he therefore prays that the defendant may be compelled to accouut with the plaintiff for the services of the said negroes and horses, and the money and other property, so received by his testator, in trust for the plaintiff, and to pay over what may be found due upon taking such account.
 

 The defendant’s answer denies that his testator ever re_ ceived any money or other property of the plaintiff, in trust for the said plaintiff; and says, further, that if the testator ever received or held any property in trust for the plaintiff, it was upon a fraudulent trust, to cover the same from the demands of the plaintiff’s creditors, the execution whereof cannot be enforced- in a Court of Equity. The defendant further insists, that, if any money or other property of the plaintiff came to the hands of his testator, the same was fully accounted for unto the plaintiff or to his creditors long since; saith that the plaintiff emigrated to the State of Tennessee in- the year 1834 or 1835; that he had resided with
 
 *448
 
 defendant’s testator, from the year 1829 until about a year before said emigration, when he married and moved away and made one crop; that the plaintiff was very largely indebted, when [le came to his brother’s house, and
 
 all
 
 these debts were paid off, and, as defendant believes, by the sale of the land to the Irwins, by the profits of his property, while at his brother’s house, and the sale of one negro woman to R. H. Kilpatrick; that any benefit, which the testator could have derived from the use of the plaintiff’s wagon and team, or any other property of the plaintiff, used by his testator, was far less than the expense of boarding and supporting the said plaintiff, while there; that no pretence of any such trust is now alleged, or of any claim to an account against his said brother, was ever advanced by the plaintiff, while he resided in North Carolina, or after his removal to Tennessee, during the life of his brother; that the testator died in December, 1838, when the plaintiff came into this State, and contested his will; that, having failed in this contest, he set up the present claim, which the defendant insists is wholly unfounded and iniquitous, and which, if it ever existed, is barred by the statute of limitations, whereof the defendant specially prays the benefit.
 

 The answer having been replied to, and proofs taken upon both sides, the cause was removed to this court, for a hearing upon the pleadings and proofs.
 

 There is no direct evidence of any such trust as that alleged in the bill. It appears from the exhibits produced, that, on the 6th of April, 1829, the plaintiff executed an absolute bill of sale to his brother Daniel for the two negroes, Stephen and Rufus, the consideration whereof is stated to be $550, and that Daniel, on the 27th of September, 1834, executed a reconveyance of those negroes to the plaintiff for the consideration as recited in the bill of sale of $600. No evidence is offered on either side explanatory of these instruments. It is in evidence, that the plaintiff, about this time or shortly before, was greatly harrassed with debt, and had a portion of his crop sold at execution. One witness, to whom Daniel Webb applied to become surety for the-plaintiff, enquired of the plaintiff the amount of his embarrassments, and was in
 
 *449
 
 formed that his debts were between, three and four thousand dollars. It is in proof, that, when the plaintiff was up, he went to Daniel Webb’s and carried with him, not only the two negroes above msntioned, but a negro girl, three beds and a table, two wagonloads of corn, about 1000 lbs. of pork, 300 lbs. of beef, 100 lbs. of lard, a wagon and four horses, and a set of blacksmith’s tools; that he married about the year 1833 or 1834, and moved off soon afterwards to an adjacent plantation, and then carried away with him all the property aforesaid but the blacksmith’s tools, which he left behind, and the provisions which were consumed by him and the family. It is in evidence, that Daniel Webb,in March, 1829, as the agent of the plaintiff and for the purpose, as he alleged, of trying to pay the plaintiff’s debts, contracted to sell a tract ofland to Joseph and John Irwin at the price of $1230; that the purchasers required of Daniel to join in the conveyance and he did so; that the money was paid in the presence of both, but received by Daniel for the avowed purpose of being applied to the payment of the plaintiff’s debts; and that, in January, 1833, the negro girl, who had been carried to Daniel’s, but was not included in his bill of sale, and hefi infant children, were sold by the plaintiff in person to Killpatrickfor the sum of five hundred dollars; that the plaintiff alleged that this sale was necessary for the payment of his debts; that the plaintiff and his brother Daniel were both present at the time when the money was paid, and the witness-thinks, but he cannot positively so affirm, that the money was taken by Daniel. It is also in proof that-, on the 18th of October, 1834, shortly before the plaintiff removed to Tennessee, he sold the negro boy Rufus, one of the two conveyed' to Daniel, and by him reconveyed to the plaintiff, to John S. Carson, for the price of $400; and this money was paid into his own hands; that he then made a public sale of his furniture, cattle, hogs and other perishable articles, and moved off with three negroes, a wagon and four horses, and a carryall to Tennessee; and no complaint has ever been heard in the' neighborhood of his leaving -any debts unpaid. A, female' witness, who lived in Daniel’s family, testifies that she has at different times heard the plaintiff ask Daniel for money to-
 
 *450
 
 pay 0ff debts — particularly the Burris debt, for which his ^an<^ was so^’ w^ien ®aniel replied that he could not trust him with the money, but would pay off the debts himself.— There js no evidence, what was the original amount of the Burris debt, on account of which this witness says the land was sold in March, 1829, except that, it appears that in October, 1832, Burris had a decree against both the Webbs for $200 and interest; that execution thereon issued, and that, on the 4th of January, 1833, about which time the plaintiff sold the negro woman and children to Carson, this decree with interest and costs, amounting altogether to $287 92 cents, was paid by one or other of the defendants in the execution. The female witness above referred to. states, that the plaintiff generally worked on the plantation or in the blacksmith’s shop, while at his brother’s, and, although he occasionally drank freely, was not habitually drunk; that the negroes, horses and wagon, which he brought with him, were employed and used on the plantation; but that, during the whole time the plaintiff resided
 
 there, she never
 
 heard of any claim set up by him, because of the services of the negroes, or use of the property. Other witnesses represent the plaintiff as occasionally riding about, when residing in his brother’s family, and are ignorant whether he rendered any labor on the plantation. A single witness testifies, that} shortly before Daniel’s death, he observed that the blacksmith’s tools, which had been left there, belonged to the plaintiff, and states that these have been sold by the executor as the property of his testator for thirty dollars and some cents. Two letters are exhibited by the defendant written by the plaintiff from Tennessee. — one dated 28th June, 1835, the other the 23d of May, 1836. They are writted in an affectionate, brotherly style, express a desire that the testator would remove to Tennessee, but contain no intimation of any unsettled demands existing between them.
 

 It is not improbable that the conveyance of the negroes, though absolute in. its form, was intended as a security for some purpose- well understood, between the parties, and this purpose having been answered, that the same were reconveyed to the plaintiff. But we are not authorised by any evi
 
 *451
 
 dence to declare a trust, and, if there were one, we are wholly unable to ascertain what was the trust. In regard to any trust, which entitles the plaintiff to claim an account, because of the supposed profits received by the defendant’s testator from the use of the wagon and horses or of the other articles of property carried by the plaintiff to testator’s residence, when he removed thereto, and while he lived as one of the testator’s family, there is an utter defect of proof. The testator did undoubtedly receive money of the plaintiff as
 
 his age?it,
 
 and the plaintiff might have demanded an account of this agency if it remained unsettled, and he required such an account, within the time prescribed by law for bringing actions of account. But we are satisfied that this matter of agency was settled between the parties. It is very improbable, if it remained unsettled, when the plaintiff married and removed from his brother’s residence, obtaining a reconveyance of the negroes and carrying away his property with him, that he would not have asked for a settlement. Still less can it be believed, that he would have finally left the State, without any intent, as we can discover, to return thereto, and have made no attempt to close this matter of account, if it were yet open. And his silence ever afterwards during his brother’s life, in relation to any such unsettled account, removes any reasonable doubt, which we can entertain about it. We have no hesitation therefore in refusing the account asked of this agency. It may be that the blacksmith’s tools, left by the plaintiff at his brother’s house, and disposed of by the present defendant, since the death of defendant’s testator, were the property of the plaintiff. If so, the sale thereof constitutes no bar against the plaintiff’s recovery of them from the possessor, and may give him a right to sue the defendant for their value in an action of trover, or for the price received in an action of assumpsit — but it furnishes no substratum for this bill.
 

 It is our opinion that the bill must be dismissed with costs.
 

 Per Curiam, Bill dismissed, with costs.